**UNITED STATES of America**

v.

**Oliver L. NORTH.**

**Crim. No. 88–0080–02.**

United States District Court, District of Columbia.

June 14, 1989.

Lawrence E. Walsh, Independent Counsel, John W. Keker, Michael Bromwich and David Zornow, Office of Independent Counsel, Washington, D.C., for U.S.

Brendan V. Sullian, Jr. and Barry S. Simon, Washington, D.C., for defendant North.

1. Count Six charged a violation of 18 U.S.C. § 1505 and § 2, relating to aiding and abetting an obstruction of Congress; Count Nine charged a violation of 18 U.S.C. § 2071(b), relating to destruction of documents; and Count Ten charged a violation of 18 U.S.C. § 201(g), regarding receipt of an illegal gratuity by a government official.

## ORDER

*Re: Motion (# 89) of Defendant Oliver L. North for Judgment of Acquittal or in the Alternative for a New Trial.*

GESELL, District Judge.

Defendant was convicted of three felonies, Counts Six, Nine and Ten of a twelve count indictment.[1] He was found not guilty of the remaining nine counts following a jury trial, and the Court had dismissed three other counts pre-trial.

Defendant has moved post-verdict before sentencing for acquittal or, alternatively, for a new trial of Counts Six, Nine and Ten.[2] The government opposes and the issues have been extensively briefed; therefore, no extended discussion is necessary. Many of the issues raised were fully considered in the course of the trial. Indeed, some were briefed and argued pre-trial when defendant moved to dismiss each count of the indictment and the Court filed opinions reviewing and rejecting the very contentions now pressed often for the third or fourth time.

*Aiding and Abetting.*

 North argues that he should be acquitted as an aider and abetter on Count Six due to defects in the aiding and abetting charge in the indictment and jury instructions, claiming that the Independent Counsel failed to prove that any principal violated 18 U.S.C. § 1505. However, there was sufficient proof for the jury to find with respect to both aspects of the count that North was aiding and abetting principals who intentionally destroyed or failed to disclose documents to obstruct Congressional inquiries, and who intentionally sought to misrepresent facts regarding arms sales to Iran before Congress. The District of Columbia Circuit has held that

2. At the close of the prosecution's case, the Court took defendant's motion for acquittal under advisement without argument. While it wished to review the proof under two or three counts now resolved by the jury's not guilty verdict, it was satisfied that there was sufficient proof to convict under Counts Six, Nine and Ten. It now denies the motion for judgment of acquittal made at the close of the government's evidence.

"It was not essential that the principal in the operation be identified so long as someone had that status." *United States v. Staten,* 581 F.2d 878, 887 (D.C.Cir.1978). The jury instructions stated that "If the principal has not committed the offense as defined previously by my discussion of the elements of the offenses, the defendant cannot be an aider or abetter." In summarizing the elements, the Court again told the jury that, *"First,* you need to find a guilty principal before a second party can be found to be an aider and abetter." North's argument urging that a principal must be designated is part of his continuing effort to insist on an evidentiary verdict form, although elsewhere he complains that the verdict form was already too evidentiary in distinguishing between aiding and abetting and the primary offenses charged.

■ North, in addition, contends that he must have been shown to have been aware of the guilty principal's intent. The jury was instructed that they needed to find "guilty knowledge on the part of the defendant that an offense was being committed by someone." The Court used the District of Columbia pattern instruction, No. 4.02, and incorporated language from the leading District of Columbia Circuit Court cases such as *United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir.1982), and *United States v. Garrett,* 720 F.2d 705 (1983). Nothing more was required.

*Custody of Documents.*

■ As to Count Nine, North seeks acquittal, contending that the Government failed to prove the custody element of 18 U.S.C. § 2071(b), which penalizes document destruction by officials "having the custody of any ... document ..." The Court has previously rejected North's definition of custodian, *United States v. North,* 708 F.Supp. 364, 369 n. 3 (D.D.C.1988). Moreover, the proof at trial showed that North signed out the original, logged, System IV documents from their official historical repository, thereby assuming the role of the government's custodian while they were signed out for his safekeeping. The Court

narrowed the jury instructions to ensure that the jury would not wrongly convict North because he also destroyed numerous documents for which he had not assumed the role of official custodian, charging:

There is evidence in this case which relates to the destruction and removal of various types of documents.... As far as Count Nine of the indictment is concerned, you are to focus solely on a particular type of document, that is, an official, formal, original document placed in and required to be placed in the permanent records of the National Security Council. The documents at issue were sometimes referred to during the evidence as original, logged, System IV documents maintained by the NSC Secretariat. These are not phone logs, PROFs notes and the like.

There was ample proof that North checked out highly sensitive TOP SECRET official documents, asked his secretary to alter these documents and never returned the originals or acknowledged alterations. This is exactly the type of conduct § 2071(b) has criminalized for well over a century. There was ample proof that North engaged in a deliberate effort to rewrite what had occurred by attempting to falsify the official record of the National Security Council, an advisory committee to the President.

*Venue.*

■ North's objections on venue grounds to his conviction for acceptance of a gratuity as alleged in Count Ten are groundless. A reasonable jury could find by a preponderance of the evidence that while in Washington, D.C., North accepted or agreed to receive the security system for his home. The jury so found. Of central importance was North's meeting with Robinette and Secord on May 5, 1986 in North's office in the Old Executive Office Building in Washington. Acting on behalf of Secord, Robinette presented various options and recommendations for a security system to North, having visited North's home in Virginia. Robinette testified that North "seemed to accept what [Robinette] told him as a preliminary plan, equipment

and plans and procedures," and North gave him approval to continue to proceed to work on the system, saying "It sounds like you're on the right track." The following month, the system was installed. There was no testimony regarding a single meeting at which a complete agreement was struck, either in Washington or in Virginia. Rather, the agreement to accept the security system gratuity developed in a continuous course of conduct, some of which took place in Washington. *See, Goodloe v. United States,* 188 F.2d 621 (D.C.Cir.1950), *cert. denied,* 342 U.S. 819, 72 S.Ct. 35, 96 L.Ed. 619 (1951). Venue may of course lie in more than one district for any crime. *See, United States v. DeLoach,* 654 F.2d 763, 765–67 (D.C.Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 366 (1981).

There was much to indicate that Robinette was giving half truths when he testified. Viewing all the evidence and giving full play to the right of the jury to determine credibility and draw inferences of fact, *United States v. Reese,* 561 F.2d 894, 898 (D.C.Cir.1977), there is no basis on which the Court could find that the evidence was insufficient to sustain a conviction on venue grounds.

■ North further urges that he is entitled to a new trial on the ground that venue must be established beyond a reasonable doubt. Venue need only be established by a preponderance of the evidence.[3]

*Specific Intent.*

■ North was not entitled to an instruction for the obstruction and gratuity counts requiring that he have known he was breaking the law. As will be indicated immediately below, the Court gave instructions designed to aid the jury on intent issues. These went well beyond routine intent instructions. North remains dissatisfied, believing, incorrectly, that the instructions should have stated that the defendant must be shown beyond a reasonable doubt to know the specific terms of the law he was violating. The Court's instructions required that the jury find that North acted with a "bad purpose" and "specifically intend[ed] to do something the law prohibits, whether he knew of the law or not." *See,* 1 W. LaFave & A. Scott, *Substantive Criminal Law* 586 (2d ed. 1986); *United States v. Dougherty,* 763 F.2d 970 (8th Cir.1985); *United States v. Arambasich,* 597 F.2d 609, 612–13 (7th Cir. 1979).

Intent was a major issue for the jury to resolve in considering the case as submitted. Under the detailed guidance given by the Court, it appears that the jury found the requisite intent lacking in some instances where the facts in other respects unequivocally established a violation of the act requirement, but the jury found the requisite intent present under similar violations where a verdict of guilty was returned.

The Court was conscious of this Circuit's observation that "the mental state required for most 'specific intent' offenses does not involve knowledge of illegality." *United States v. Ehrlichman,* 546 F.2d 910, 919 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977). Furthermore, the Court was mindful of this Circuit's recent opinion in *United States v. Rhone,* 864 F.2d 832 (D.C.Cir.1989), and accordingly explicitly permitted the jury to consider whether ignorance of the law affected the defendant's formation of the requisite intent. The jury instructions stated, "He need not have known what the law prohibits, but this is a factor, along with others I have mentioned which you may consider in determining his intent."

As to Count Six, the Court also reminded the jury with respect to the obstruction charges that they involved not only the

---

**3.** *United States v. Taylor,* 828 F.2d 630, 633 (10th Cir.1987); *United States v. Griley,* 814 F.2d 967, 973 (4th Cir.1987); *United States v. Lewis,* 797 F.2d 358, 366 (7th Cir.1986), *cert. denied,* 479 U.S. 1093, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1987); *United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir.), *cert. denied,* 469 U.S. 918 and 934, 105 S.Ct. 297, 332, 83 L.Ed.2d 232, 269 (1984); *United States v. Parrish,* 736 F.2d 152, 158 (5th Cir.1984) (per curiam); *United States v. Rivamonte,* 666 F.2d 515 (11th Cir.1982); *United States v. Durades,* 607 F.2d 818, 820 n. 1 (9th Cir.1979); *United States v. Black Cloud,* 590 F.2d 270, 272 n. 2 (8th Cir.1979).

element of specific intent, but also corrupt intent.

[A] deliberate, knowing bad purpose is not enough to convict. He must be shown beyond a reasonable doubt to have had the bad purpose to act in the precise manner a statute was intended to prevent, that is, to obstruct or try to obstruct an inquiry or proceeding ... A person who has this purpose and does an act knowingly and intentionally, with the deliberate purpose to conduct himself in a manner prohibited by the statute, acts with specific corrupt intent.

The Court instructed throughout that the defendant must have specifically intended to obstruct an inquiry, in accord with *United States v. Haldeman,* 559 F.2d 31, 114 & n. 226 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Jackson,* 513 F.2d 456, 461 (D.C.Cir.1975); and *United States v. Jeter,* 775 F.2d 670, 675, 679 (6th Cir.1985), *cert. denied,* 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986). The Court was thus taking a stricter view of the intent requirement for obstruction than is followed in several other circuits. *United States v. Silverman,* 745 F.2d 1386, 1393 (11th Cir. 1984); *United States v. Buffalano,* 727 F.2d 50, 54 (2d Cir.1984); *United States v. Neiswender,* 590 F.2d 1269, 1274 (4th Cir.) *cert. denied,* 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979).

Similarly, the instructions for Count Ten are abundantly clear that North must have received the security system "for his personal benefit, because of an official act or acts already performed or to be performed by him in the future which legally or otherwise had or would benefit Secord." The Court further required that the defendant "purposely and willingly took it knowing it was for his past or future official act." Defendant's objection in footnote 14 is meritless and is taken wholly out of context.

*Authorization.*

■ North also contends his constitutional rights were infringed by the instruction regarding authorization. The Court's evidentiary rulings liberally permitted introduction of evidence relating to authorization, thus fully acknowledging that authorization could be an element of intent. These rulings were designed to permit North to have a fair trial—the opportunity to tell his story—not to guarantee that authorization would be charged as an absolute defense, as defendant assumed.

The Court's instructions on authorization were in accord with *United States v. Ehrlichman,* 376 F.Supp. 29, 34 (D.D.C.1974), *aff'd,* 546 F.2d at 925–926, and they permitted consideration of a broad sweep of other evidence also bearing on intent.

*Obstruction.*

■ North's contention that under 18 U.S.C. § 1505 an obstruction had to succeed flies in the face of the clear text of the statute itself, which prohibits *endeavors to obstruct* congressional inquiries. *See also, United States v. Jackson,* 513 F.2d at 460 (regarding 18 U.S.C. § 1503). The criminality or legality of alleged obstructive conduct cannot turn on its success, as the effort to obstruct an inquiry is an evil the statute seeks to address.

*Unanimity.*

■ The Court carefully instructed the jury with respect to unanimity, and a special unanimity instruction relating to destruction, alteration or removal of documents when considering Count Nine was not necessary. The Court narrowed the charge to relate to five specific documents, and, after quoting the statute with its six verbs, narrowed the charge to the three relevant concepts of destruction, alteration (falsification) and removal. In the light of the evidence in the case, destruction, alteration and removal of the specific documents at issue were not conceptually distinct, as they were all related in a continuous course of events that was directed at the central evil the statute sought to criminalize: depriving the government of its accurate permanent records.

*Duress.*

■ The defendant contends the Court should have instructed the jury as to duress when presenting the elements and defenses pertinent to Count 10. A duress

instruction was not appropriate because North had a legal alternative to acceptance of the security system as a gratuity—he could have paid for it himself from the funds he admittedly had, or he could conceivably have approached one of his many wealthy friends who were in no position to gain from North's official acts. Instead, he approached Secord, who was benefitting from business North dispensed from his NSC office adjacent to the White House. Under *United States v. Jenrette*, 744 F.2d 817, 820–21 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985) and *United States v. Bailey*, 444 U.S. 394, 410–413, 100 S.Ct. 624, 634–36, 62 L.Ed.2d 575 (1980), the defense was thus unavailable. *See also, United States v. Aguilar*, 871 F.2d 1436, 1466–1468 (9th Cir. 1989). Moreover, long after North heard of the threat made by Abu Nidal, he backdated letters indicating he was to pay for the system and he concealed the fact that Secord had actually paid Robinette for the system. This behavior reflects his realization of wrongdoing, rather than duress. The Court also notes in passing that it can find no indication that the defendant objected at the close of the jury instructions to the failure to instruct on duress although the defendant consumed more than an hour stating other objections.

*Verdict Form.*

The verdict form was prepared by the Court and amended after discussion with counsel in open court. A copy of it is attached. It conforms to the indictment and is unobjectionable. Aiding and abetting was listed separately as the Court thought it essential to clarify the basis on which a guilty verdict, if any, was rendered, and its separate listing works only to the advantage of defendant at sentencing and otherwise.

*Failure to Sequester.*

■ Defendant contends the jury should have been sequestered throughout the trial. On July 12, 1988, the Court solicited suggestions regarding jury selection by letter to Mr. Walsh and Mr. Sullivan. In that letter, the Court stated, "The Court does not presently intend to sequester the jury, having in mind the possible length of the trial and intervening delays during trial which the circumstances of this trial may necessitate." No objection was raised although the defendant submitted several dozen motions thereafter and both sides made numerous suggestions to the Court regarding jury selection. With the consent of the parties, following questionnaire responses not directed toward sequestration, many prospective jurors were excused for cause, not including, of course, causes relating directly to sequestration throughout a lengthy trial.

Jury selection began on January 31, and that day, North finally filed a motion to sequester. The parties conducted the voir dire, but again did not ask questions directed specifically to whether jurors would be unavailable if sequestered for what was estimated to be a four or five month trial. The motion was denied on February 6, and the jury was seated on February 9. Jury trial began on February 21, and closing arguments concluded on April 19. Throughout the trial, the Court continuously instructed the jury in writing and orally to avoid media referring to any aspect of the case. Responses of jurors during in camera proceedings demonstrated that the instructions were followed.

By Order dated April 19, 1989, the Court on its own motion sequestered the jury while it deliberated, beginning April 20 when the jury was instructed. The sequestered jury deliberated six days per week until May 4, 1989, when it returned a verdict. The foregoing procedures were adequate to insulate the jurors.

*Press Contact with Jurors.*

By separate Order, the Court has addressed and rejected the defendant's contention that he is entitled to a new trial or at least an evidentiary hearing regarding allegedly improper press contacts with jurors. (Order Re: Motion (# 87) of Defendant North for a Hearing Concerning Attempted Contact With Jurors by NBC News, June 14, 1989.)

*Trial Team's Authority to Prosecute.*

 Contrary to defendant's now-familiar contention, Associate Counsels Keker, Bromwich and Zornow did not require an appointment with the advise and consent of the Senate, and they were authorized to represent the United States, having been appointed by Independent Counsel Walsh. *See, United States v. North,* 708 F.Supp. 387, 388 (D.D.C.1988); 28 U.S.C. § 594(c); 28 C.F.R. § 600.1(a) and (c); *Morrison v. Olson,* —— U.S. ——, 108 S.Ct. 2597, 2604, 101 L.Ed.2d 569 (1988); *In re Sealed Case,* 829 F.2d 50, 57 (D.C.Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 753, 98 L.Ed.2d 765 (1988) and *Buckley v. Valeo,* 424 U.S. 1, 126 n. 162, 96 S.Ct. 612, 685–86 n. 162, 46 L.Ed.2d 659 (1976) (per curiam).

*Conclusion.*

For the foregoing reasons, and for reasons stated throughout the record of the case, each and every ground for North's motion for a judgment of acquittal or a new trial is rejected, and the post-verdict motion is denied.

SO ORDERED.

### APPENDIX

In the United States District Court

for the District of Columbia

United States of America

v.

Oliver L. North

May 4, 1989

Criminal No. 88–0080–02

### VERDICT FORM

We the jury, after considering the facts and circumstances relating to each count separately, unanimously find as indicated below.

### COUNT ONE

Obstruction of Congress in September and October 1985. 18 U.S.C. §§ 1505:

 Guilty ___ Not Guilty X 

If, but only if, you have found the defendant NOT GUILTY, answer the following:

Aiding and Abetting. 18 U.S.C. § 2:

 Guilty ___ Not Guilty X 

### COUNT TWO

False Statements on September 5, 1985. 18 U.S.C. § 1001.

 Guilty ___ Not Guilty X 

If, but only if, you have found the defendant NOT GUILTY, answer the following:

Aiding and Abetting. 18 U.S.C. § 2:

 Guilty ___ Not Guilty X 

### COUNT THREE

False Statements on September 12, 1985. 18 U.S.C. § 1001.

 Guilty ___ Not Guilty X 

If, but only if, you have found the defendant NOT GUILTY, answer the following:

Aiding and Abetting. 18 U.S.C. § 2:

 Guilty ___ Not Guilty X 

### COUNT FOUR

False Statements on October 7, 1985. 18 U.S.C. § 1001.

 Guilty ___ Not Guilty X 

If, but only if, you have found the defendant NOT GUILTY, answer the following:

Aiding and Abetting. 18 U.S.C. § 2:

 Guilty ___ Not Guilty X 

### COUNT FIVE

Obstruction of Congress in August 1986. 18 U.S.C. § 1505:

 Guilty ___ Not Guilty X 

### COUNT SIX

Obstruction of Congress in November 1986. 18 U.S.C. § 1505:

 Guilty ___ Not Guilty X 

If, but only if, you have found the defendant NOT GUILTY, answer the following:

Aiding and Abetting. 18 U.S.C. § 2:

 Guilty X Not Guilty ___

## COUNT SEVEN

Obstruction of a Presidential Inquiry in November 1986. 18 U.S.C. §§ 1505:

Guilty ___ Not Guilty X

If, but only if, you have found the defendant NOT GUILTY, answer the following:

Aiding and Abetting. 18 U.S.C. § 2:

Guilty ___ Not Guilty X

## COUNT EIGHT

False Statements on November 23, 1986. 18 U.S.C. § 1001.

Guilty ___ Not Guilty X

## COUNT NINE

Concealing, Removing, Mutilating, Obliterating, Falsifying and Destroying Official Documents. 18 U.S.C. § 2071(b).

Guilty X Not Guilty ___

If, but only if, you have found the defendant NOT GUILTY, answer the following:

Aiding and Abetting. 18 U.S.C. § 2:

Guilty ___ Not Guilty ___

## COUNT TEN

Receipt of an Illegal Gratuity from Secord: The Security System. 18 U.S.C. § 201(g), recodified as § 201(c)(1)(B).

Guilty X Not Guilty ___

## COUNT ELEVEN

Conversion of Traveler's Checks. 18 U.S.C. § 654.

Guilty ___ Not Guilty X

If you have found the defendant guilty of conversion, was the amount converted over $100.00?

Yes ___ No ___

## COUNT TWELVE

Conspiracy to Defraud the United States, the Department of the Treasury and the IRS. 18 U.S.C. § 371.

Guilty ___ Not Guilty X

/s/ [Signature]
Foreperson

Date: May 4, 1989