This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 32,825**

**ROBERT FOLLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellee

Nick Sitterly
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}     Defendant was convicted in metropolitan court for violating a stipulated order of protection, entered pursuant to NMSA 1978, Section 40-13-5 (2008) of the Family

Violence Protection Act (FVPA), NMSA 1978, §§ 40-13-1 to -12 (1987, as amended through 2013). He sought a trial de novo in the district court, which the court denied. The district court concluded that Defendant's appeal was an appeal from a domestic violence conviction and that, therefore, the case should remain on the on-record calendar. We affirm the decision of the district court.

**BACKGROUND**

{2}     Defendant and Victim were in a relationship from late 2007 until October 2011. After the end of their relationship, in December 2011, Defendant and Victim stipulated to a one-year order of protection, agreeing that their relationship was that of an "intimate partner" as defined by federal law. The order of protection prohibited Defendant from domestic abuse and prohibited Defendant from coming closer than one hundred yards from Victim, her home, and her workplace, except that Defendant could be within twenty-five yards from Victim in a public place, and could be at his parents' house across the street from Victim's house, "without any kind of contact" with Victim.

{3}     Approximately three weeks after entry of the order, Defendant was charged with a misdemeanor "violation of an order of protection, domestic violence." Defendant waived his right to a jury trial, and the matter was tried on-record to the bench in metropolitan court. Victim and Defendant were the only witnesses to testify at the trial. Victim testified that, on December 30, 2011, Defendant was across the

street at his parents' house, when he saw Victim raking leaves in her backyard, approached her house, stood in her driveway, cursed at her, and yelled in an elevated girl-like voice that it was "time to check [her] mail." Victim testified that she could see Defendant standing in her driveway through the slats in the fence that connected her yard to her driveway but that she ignored him. Receiving no reaction from Victim, Defendant then drove behind the house to the back alley abutting Victim's backyard, where he yelled more obscenities and threats at Victim, including calling her a "fucking bitch," and telling her she was "going to pay . . . for leaving him—for even fucking with him." Victim testified that Defendant was in the alley for approximately eight to ten minutes.

{4}     Defendant testified that, although he knew about the order of protection, he did not violate it. Rather, he testified that on the day of the alleged incident, he dropped off his granddaughter at his parents' house, but he never saw Victim, never drove behind her house, and never contacted her.

{5}     At the conclusion of trial, the metropolitan court entered oral findings and stated that it found beyond a reasonable doubt that the events Victim testified to had occurred. On that basis, the court convicted Defendant for violating the order of protection. During sentencing, Victim told the judge that she was "very afraid of [Defendant]" and that she was "afraid for [her] life." The metropolitan court subsequently entered judgment on the violation of the order of protection and

3

sentenced Defendant to 364 days in custody. However, the court suspended the sentence and placed Defendant on supervised probation, prohibiting him from, among other things, having any contact with Victim "of any kind, directly, indirectly or through a third party," and requiring him to "undergo an assessment and follow any recommendations made by the [probation officer] for [domestic violence] counseling."

{6}     Defendant appealed to the district court, where he demanded a de novo jury trial pursuant to NMSA 1978, Section 34-8A-6(D) (1993). The State filed a motion to deny Defendant's request for a de novo jury trial and to maintain the case as an on-record appeal. Specifically, the State argued that Defendant was not entitled to a de novo trial because he was convicted of a domestic violence offense in the metropolitan court and that, therefore, he was only entitled to an on-record review. The district court agreed, and relying on *State v. Wilson*, 2006-NMSC-037, 140 N.M. 218, 141 P.3d 1272, and *State ex rel. Schwartz v. Sanchez*, 1997-NMSC-021, 123 N.M. 165, 936 P.2d 334, entered an order denying Defendant's request for de novo jury trial. In its order, the court gave Defendant thirty days to proceed with an on-record appeal by filing a statement of issues. Defendant refused to pursue the case as an on-record appeal, and the district court subsequently dismissed the matter for lack of prosecution and failure to follow the rules of criminal procedure. This appeal of the district court's decision timely followed.

**DISCUSSION**

{7} Whether the judgment and sentence issued by the metropolitan court involved domestic violence is a legal conclusion subject to review by the district court and is a question of statutory interpretation that we review de novo. *Wilson*, 2006-NMSC-037, ¶¶ 5, 6. "Our primary goal when interpreting a statute is to give effect to the Legislature's intent, which is determined by looking at the plain language used in the statute, as well as the purpose of the underlying statute." *State v. Parrish*, 2013-NMCA-066, ¶ 6, 304 P.3d 730, *cert. denied*, 2013-NMCERT-004, 301 P.3d 858. Defendant contends that he is entitled to a de novo trial in the district court and not an on-record review of the metropolitan court proceeding because the statute does not define a violation of an order of protection as an act of domestic violence. We begin with a review of the district court's appellate jurisdiction and then turn to the issue in this case.

{8} The New Mexico Constitution vests district courts with "appellate jurisdiction of all cases originating in inferior courts." N.M. Const. art. VI, § 13. In exercising that appellate jurisdiction, "trial shall be had de novo unless otherwise provided by law." N.M. Const. art. VI, § 27. Appeals from the metropolitan court to district court may be de novo or on the record depending on the type of case. *State v. Foster*, 2003-NMCA-099, ¶ 9, 134 N.M. 224, 75 P.3d 824. For de novo appeals, the district court conducts a new trial as if the trial in metropolitan court had not occurred. *Id.* For on-record appeals, the district court acts as a typical appellate court, and the district

court judge simply reviews the record from the metropolitan court trial for legal error. *Id.*

{9} Pursuant to Section 34-8A-6(C), the metropolitan court is a court of record in only two instances: first, for cases involving driving while under the influence of intoxicating liquors or drugs, and second, for cases involving domestic violence. With regard to being a court of record for criminal actions involving domestic violence, Section 34-8A-6(C) provides, in part, that

> [a] criminal action involving domestic violence means an assault or battery under any state law or municipal or county ordinance in which the alleged victim is a household member as defined in the [FVPA].

{10} Recognizing that Section 34-8A-6(C) "must be read in pari materia with the definition of domestic abuse in the [FVPA,]" our Supreme Court has held that all domestic abuse actions, as defined by the FVPA rather than the more general definition of domestic violence in Section 34-8A-6(C), should be tried on-record. *Sanchez*, 1997-NMSC-021, ¶ 7.

{11} The FVPA defines "domestic abuse" in relevant part as

> (2) . . . an incident by a household member against another household member consisting of or resulting in:
> (a) physical harm;
> (b) severe emotional distress;
> (c) bodily injury or assault;
> (d) a threat causing imminent fear of bodily injury by any household member;
> (e) criminal trespass;
> (f) criminal damage to property;

6

(g) repeatedly driving by a residence or work place;

(h) telephone harassment;

(i) harassment; or

(j) harm or threatened harm to children as set forth in this paragraph[.]

Section 40-13-2(D)(2). Thus, the question of whether Defendant was entitled to a trial de novo or was required to proceed with an on-record appeal depends on whether his metropolitan court conviction involved domestic abuse as that term is defined above.

{12}     While *Sanchez* clarified that all domestic abuse actions should be tried on-record, *Wilson* established the process for district courts to follow when reviewing whether a metropolitan court conviction in a particular case is one involving domestic abuse under the FVPA. *Wilson*, 2006-NMSC-037, ¶ 9. First, citing Section 40-13-7(E), the *Wilson* Court noted that the FVPA requires that a "statement shall be included in a judgment and sentence document to indicate when a conviction [in metropolitan court] results from the commission of domestic abuse." *Wilson*, 2006-NMSC-037, ¶ 9 (internal quotation marks omitted). Thus, "[t]he starting point for [the district court's] inquiry must be the [m]etropolitan [c]ourt's judgment and sentence because this document must include a statement if the case involves domestic [abuse]." *Id.*; *see State v. Krause*, 1998-NMCA-013, ¶ 8, 124 N.M. 415, 951 P.2d 1076 ("In determining what kind of appeal a defendant is entitled to, we must view the conviction, not the charging document."). Our Supreme Court concluded that if the judgment does not include such a statement, the metropolitan court "has implicitly

7

concluded that the conviction was not based on the commission of domestic abuse." *Wilson*, 2006-NMSC-037, ¶ 9.

{13} Next, *Wilson* mandates that the metropolitan court's ruling regarding whether a conviction was based on the commission of domestic abuse, whether explicit or implicit, is subject to review by the district court. *Id.* ¶ 10. The metropolitan court's determination that a case does or does not involve domestic violence is based on the district court's view of the facts presented and interpretation of the FVPA. *Id.* Thus, the district court should review the metropolitan court's factual determinations "with some deference, considering whether they are supported by substantial evidence in the record." *Id.* It is with this guidance that we consider the district court's order in this case.

{14} The metropolitan court's judgment does not explicitly contain a statement indicating that the conviction resulted from the commission of domestic abuse. Instead, the judgment simply states that it "HEREBY sentences . . . Defendant" for violation of a restraining order and then suspends the sentence on the condition of supervised probation with various conditions. We recognize that one of the conditions requires Defendant to "undergo an assessment and follow any recommendations made by the [probation officer] for [domestic violence] counseling." And another prohibits Defendant from having any contact with Victim "of any kind, directly, indirectly or through a third party." However, for purposes of reviewing Defendant's conviction

on the record, we are not persuaded that these probationary conditions meet the statutory requirement that the judgment *shall* include a statement indicating that a defendant's conviction results from the commission of domestic abuse. *See* § 40-13-7(E); *Wilson*, 2006-NMSC-037, ¶ 9. Therefore, as *Wilson* instructs, where the judgment does not include such a statement, the metropolitan court has implicitly concluded that Defendant's conviction was not a conviction for domestic abuse. Accordingly, we must consider whether the district court properly determined that, based on the metropolitan court's factual findings, the case was one involving domestic abuse.

{15}     It is unclear what specific factual findings the district court reviewed when it ultimately determined that "this is an appeal from a domestic violence conviction and that the case should remain on the on-record calendar."[1] Nevertheless, applying the standard of appellate review set forth in *Wilson*, we conclude that the metropolitan

---

[1]For proper appellate review, it would be helpful if the district court in the future would follow the process articulated in *Wilson* when reviewing a defendant's metropolitan court conviction. *See Wilson*, 2006-NMSC-037, ¶ 12 (observing, in a harassment and criminal trespass case, that the district court followed an acceptable procedure when it (1) reviewed the record from the metropolitan court's hearing, (2) noted the facts the victim's testimony established, and (3) determined, primarily as a matter of law, that the uncontroverted facts established that because the defendant and the victim were in a continuing personal relationship, the defendant's conviction involved domestic abuse).

9

court's factual determinations are supported by substantial evidence in the record. *See Wilson*, 2006-NMSC-037, ¶ 10.

**{16}** As a preliminary matter, the metropolitan court's judgment and sentence does not contain any written factual findings. However, the court's oral ruling at the conclusion of trial made clear that it believed Victim's testimony about the events that took place on December 30, 2011. *See San Pedro Neighborhood Ass'n v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2009-NMCA-045, ¶ 8, 146 N.M. 106, 206 P.3d 1011 (noting that, although we do not consider oral rulings final orders, they are instructive of the court's intent where the court's decision is ambiguous). To the extent Defendant testified to the contrary, the metropolitan court was free to disregard his testimony and find it not credible. *See State v. Vigil*, 1975-NMSC-013, ¶ 16, 87 N.M. 345, 533 P.2d 578 (stating that it is for the fact finder to determine the credibility of the witnesses and the weight to be given to their testimony, and the fact finder may reject a defendant's version of an incident); *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33 ("[W]hen there is a conflict in the testimony, we defer to the trier of fact."). "The question [for us on appeal] is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. In this case, we conclude that Victim's

detailed testimony at trial provided substantial evidence to support the metropolitan court's factual determinations regarding the incident in question.

{17}     We now review de novo the metropolitan court's application of law to the facts in order to determine whether this case involved the commission of domestic abuse as that term is defined in Section 40-13-2(D) of the FVPA. We agree with the State's assertion that Defendant's conduct can properly be characterized as domestic abuse under several of the definitions contained in Section 40-13-2(D) pertaining to household members including "threats causing [Victim] to fear imminent [bodily] harm, criminal trespass, or repeatedly driving by [Victim's] residence[.]" As we have noted, it is undisputed that Victim and Defendant were household members. *See* § 40-13-2(E) (including in the definition of "household member" "a person with whom the petitioner has had a continuing personal relationship"). Moreover, the evidence at trial established that, in spite of the fact that Defendant was aware of the terms of the order of protection, he still went into Victim's driveway, swore at her and told her in a strange voice to check her mail, then, after receiving no reaction, drove around to Victim's back alley, where he stayed for eight to ten minutes, during which time he called Victim obscene names, swore at her, and threatened that she was "going to pay . . . for leaving him—for even fucking with him." Victim was afraid and called the police. These facts constitute the type of threats causing "imminent fear of bodily injury" that Section 40-13-2(D)(2)(d) defines as domestic abuse. Consequently, the

11

district court did not err when it deferred to the metropolitan court's factual findings and determined that Defendant's conviction resulted from the commission of domestic abuse and that, therefore, Defendant was not entitled to a trial de novo. Further, because Defendant refused to pursue an on-record appeal, we affirm the decision of the district court dismissing the appeal.

{18} We briefly address Defendant's arguments. Defendant contends that, because a violation of an order of protection is not specifically referenced in the general "domestic violence" language contained in Section 34-8A-6, and is not explicitly contained in the more specific definitions of domestic abuse found in Section 40-13-2(D), a violation of an order of protection does not constitute an act of domestic abuse. Defendant also argues that the judgment does not include a statement of domestic violence, and because the district court did not address the metropolitan court's findings, this case must be reversed. Defendant's arguments ignore the clear holdings of *Sanchez* and *Wilson*.

{19} Defendant's contention that a violation of an order of protection is not, in itself, an act of domestic violence fails for two reasons. First, the stipulated order of protection prohibited Defendant from abusing Victim or members of her household. Moreover, the order incorporated the definition of domestic abuse set forth in Section 4-13-2(D). Applying the facts supporting Defendant's conviction against the stipulated order of protection, the only reasonable conclusion to be drawn is that the

12

metropolitan court convicted Defendant of domestic abuse. Furthermore, our conclusion is consistent with the holding in *Sanchez* that on-record appeals are important in *all* actions defined as domestic abuse in the FVPA. 1997-NMSC-021, ¶ 9. As *Sanchez* recognized, because domestic violence is often repeated, requiring all domestic abuse actions to be tried on-record furthers the public policy of requiring victims to only testify once against the accused. *Id.* Given the factual underpinnings here, this is precisely the type of case that the Legislature intended should be tried on-record.

{20}    Defendant's argument that he is entitled to a trial de novo because the judgment does not include a statement of domestic abuse is also misplaced. As we have discussed, when a judgment does not include an express statement that the conviction involved domestic abuse, *Wilson* requires the district court to review the metropolitan court's factual determinations, considering whether they are supported by substantial evidence in the record, and then apply the law to the facts. 2006-NMSC-037, ¶ 10. In other words, the court must look at the conduct underlying the conviction to determine whether that conduct constitutes domestic abuse as that term is defined in Section 40-13-2(D) of the FVPA. Notably, Defendant does not discuss, let alone challenge, *any* of the testimony presented to the metropolitan court in either his brief in chief or reply brief. We assume, therefore, that Defendant agrees with the metropolitan court's view of Victim's testimony. Accordingly, reviewing de novo the metropolitan court's

application of the law—Section 40-13-2(D)—to the facts in this case, we conclude that the conviction from which Defendant appeals necessarily involved domestic abuse.

{21} The district court did not err in determining that Defendant's conviction in metropolitan court was based on domestic violence and that, therefore, this appeal was properly reviewed on the record presented to the metropolitan court rather than a de novo trial. Defendant's refusal to file a statement of appellate issues or pursue an on-record appeal properly resulted in dismissal of this matter.

**CONCLUSION**

{22} The decision of the district court is affirmed.

{23} **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**